## STACKHOUSE v. WHEELER.

1. When, in action to marshal assets, the court takes possession and control of the property of a testator for the purpose of paying his debts, a purchaser from a devisee of a part of such property, without leave of the court and with knowledge of the action pending, purchases subject to the right of the court to take the property for the purpose of paying the debts of the estate.

2. A purchaser at sheriff's sale of the interest of the debtor in land of her deceased husband, of whom she was sole devisee and also executrix, sold under judgment founded upon her individual debt,—such purchaser having knowledge that an action, instituted by the executrix and with purposes not fully accomplished, is then pending to subject this very land to the payment of testator's debts,—has no valid title as against one who afterwards purchases under a subsequent order of the court in that cause.

3. The purchaser at sheriff's sale took only the interest of the devisee remaining after the payment of testator's debts.

4. This case distinguished from *Smith* v. *Grant*, 15 *S. C.* 136.

5. In action instituted by an executrix and sole devisee to have her testator's lands sold in aid of assets, the court enjoined all creditors of testator from proceeding either at law or in equity to sue or collect any claims against the estate of testator. *Held,* that this order prohibited a creditor of testator from bringing action against the devisee to subject the lands descended to the payment of his demand.

6. Exception alleging error in an omission to charge not considered, it not appearing in the case that the Circuit judge was requested so to charge.

---

Before WALLACE, J., Marion, October, 1881.

This case is fully stated in the opinion of this court.

Mr. *C. A. Woods,* for appellant.

Messrs. *W. W. Harllee, Johnson & Johnson,* contra.

April 17, 1882. The opinion of the court was delivered by MR. JUSTICE McIVER. John C. McClenaghan, by his will, after directing his executrix to pay all his debts and funeral expenses, devised and bequeathed his whole estate both real and personal to his wife, Mary S., and appointed her executrix. She subsequently intermarried with Duncan McIntyre, and on May 6, 1871, they filed a complaint to marshal the assets of the testator's estate, for injunction and general relief. Under this action an order, without date, was granted enjoining all creditors of the testator, as well as those of McClenaghan & Fairlee, a legal firm of which the testator was the surviving member, " from proceeding either at law or equity to sue or collect any claims against the estate of John C. McClenaghan, deceased ;" requiring such creditors to prove their claims before a referee; directing that the executors of McClenaghan, as well as the executor of Fairlee, account before said referee, and that the real estate of the testator be sold by the referee. On February 24, 1872, the referee reported that he had sold a part of the real estate, but that the remainder was not sold for the reason that it was represented by counsel that the executrix, Mrs. McIntyre, was sole devisee, and that she desired to avoid a sale of the balance if possible, and that it was *probable* enough had been sold to discharge the debts of the testator; consequently, the referee had indefinitely postponed any further sale. This report was confirmed by an order dated February 23, 1872, which must be a clerical error, as the report bears date the 24th.

This report seems to have been made before any proof of claims had been taken, for we find that on September 18, 1872, the referee made another report of the sale, in which he says : " That from the amount of claims proven, after consultation with plaintiffs' counsel, it was thought that a sufficiency had been sold to meet the liabilities of the testator. If, however, in auditing the claims against the firm of McClenaghan & Fairlee, it should become necessary to sell the remainder of the testator's lands, the referee can yet do so : a necessity, however, which the referee hopes will not occur." In this report the referee embraces a schedule of the claims proved, in

reference to which he says : " To many of the simple contract claims plaintiffs' counsel interpose the plea of the statute of limitations, which, if insisted on, will bar many of that class of claims." In the schedule such of the claims as appear on their face to be subject to that plea are marked " barred by statute." There is also appended to the report a list of claims, signed by plaintiffs' counsel, to which the plea of the statute was interposed ; and while the claim presented by E. T. Stackhouse against McClenaghan & Fairlee is marked " barred " on the schedule, it is *not* embraced in the list of claims to which the statute was pleaded. This report was likewise confirmed, and the referee ordered to pay the costs and fees in the case, the taxes, judgments, and specialty claims, by an order dated February 23, 1872, which no doubt is a clerical error and should be 1873 ; but no order was made in reference to the simple contract claims, for the reason, doubtless, that the report of the referee left it doubtful which of the simple contract claims were established.

By an order dated March 28, 1873, the referee was required to turn over to the clerk of the court all the funds and assets in his hands belonging to the estate of the testator, with a statement of money received and paid out by him ; and the clerk was directed to pay out all funds coming into his hands, " as heretofore ordered by this court." This order was complied with by the referee, and the clerk, by a subsequent order dated December 5, 1874, was directed " to pay over to the creditors of J. C. McClenaghan, deceased, who have proven their claims before him, any funds in his hands or that may come into his hands, *pro rata*, according to their respective demands."

On July 16, 1875, H. McClenaghan, one of the simple contract creditors, who had presented a claim before the referee, took out a rule on the clerk to show cause why he had failed to pay his claim. To this rule the clerk made return that the counsel for the plaintiffs had been changed since the order to pay out the funds was passed, and that he had received notice from the counsel substituted for those originally representing the plaintiffs that they interposed the plea of the statute " to

claims allowed, and objected to the payment out of the fund." Under these circumstances he did not feel at liberty to proceed in paying out the fund, although before receiving notice of the change of counsel he had made a payment on the claim of H. McClenaghan, inasmuch as that claim was not on the list of those to which the plea of the statute had been interposed by the original counsel appended to the report of the referee; but that it then appeared from an affidavit of the referee, dated July 22, 1875, accompanying the return of the clerk to the rule that the plea of the statute was interposed "to every claim," and that he had overruled the plea as to the claim of H. McClenaghan.

This affidavit is not embraced in the "Case" as submitted here, but by consent of counsel has been introduced; and it is difficult to reconcile its statements with the previous report of the referee, made nearly three years before, except by supposing that the referee after that lapse of time had forgotten the facts; for it is manifest from his report, as well as from the list of claims appended thereto, that the statute was not pleaded to all of the simple contract claims, while in the affidavit it is stated that the plea of the statute was interposed "to every claim." This, however, is not a matter of any consequence to our present inquiry, for this affidavit was not made until long after the sale by the sheriff, under which the defendant claims, and therefore could have had no influence in inducing her to purchase. By an order dated July 23, 1875, the rule on the clerk was discharged, and it was ordered "that unless proper legal steps be taken to test the *bona-fide* and legal status of the claims proven, or any of them, by the first day of September next, the clerk of the court do proceed without further delay to pay out the funds in his hands upon claims proved according to their priorities and legal rights."

On August 24, 1875, another order was granted, which, after reciting that the referee's report on claims "is too indefinite, and that the clerk was at a loss to know how to pay out the funds in his hands under the various preceding orders, directed the clerk to pay the specialty claims and hold the balance of the funds subject to the further order of the court,

and that he " make a full report on the condition of all claims, including simple contract claims, to the next term of this court, with a succinct statement of the questions he may wish to refer to said court for its decision." Under this order the clerk made a report on November 30, 1875, in which, after setting out what the referee had done together with the schedule of claims substantially as stated by the referee, except that none of the claims on the schedule was marked "barred by the statute," as well as the list of claims to which the plaintiff's original counsel had interposed the plea of the statute, he says : " As the report of the special referee is very indefinite in distinguishing the claims to which the statute of limitations is pleaded, the clerk feels embarrassed, and desires the judgment of the court whether the former order confirming the report shall be his guide, with the after explanations of the special referee contained in an affidavit sustaining the return under the rule against the clerk, and herewith referred to as part of this report."

Upon this report two orders were taken, both dated December 3, 1875, one adjudging that the claim of H. McClenaghan was a valid claim, and the other directing the original referee to "report upon the claims against the estate upon calling upon the creditors to appear before him after due notice ;" and this is conclusive evidence that the court did not consider that the amount of the claims had ever been ascertained. Subsequently another referee was substituted to take proof of the claims of J. W. Dillon and Dillon & Russ. Under this last-mentioned order a claim was presented by E. T. Stackhouse as assignee against John C. McClenaghan as agent of the creditors of J. W. Dillon and Dillon & Russ. After protracted litigation, this claim, which is understood to be the same as that originally presented by Stackhouse against McClenaghan & Fairlee, was established (12 *S. C.* 185), and the remainder of the real estate of John C. McClenaghan, consisting of a house and lot in the town of Marion, which is the subject-matter of the present suit, was ordered to be sold by the master, and the same was sold in November, 1880, pursuant to said order, and bid off by the plaintiff E. T. Stackhouse, to whom titles were

made and the sale confirmed by an order of the court made November 20, 1880.

While the foregoing proceedings were pending, to wit, on the first Monday in August, 1874, the sheriff, under an execution in his office against Mrs. Mary S. McIntyre, issued on a judgment recovered against her for a debt due by her individually, "levied upon and after due and legal notice sold the interest of Mary S. McIntyre in the house and lot above mentioned." At this sale the defendant, Susan W. Wheeler, became the purchaser, paid the purchase-money, and took titles from the sheriff. On January 7, 1881, this action was commenced to recover possession of said house and lot. It appeared in evidence that the defendant paid full value for the property and had improved it very much since her purchase. There was also evidence from one of the original attorneys for Mrs. McIntyre, that up to April 6, 1870, the rents of the house and lot were collected for her as executrix, as well as evidence from C. Graham " that he rented the house and lot from Mrs. McIntyre and accounted to her for the rents," but when this was, did not appear. It was conceded that the defendant not only had such constructive notice as might be implied from the pendency of the proceedings in the case to marshal assets, but that, through her husband and agent, who had examined these proceedings prior to the sheriff's sale, she had at the time of that sale actual notice of all the facts disclosed by those proceedings. It was also in evidence that the sale to plaintiff was forbidden by the defendant and notice given of her claim. This with the record of the proceedings to marshal the assets of the estate of John C. McClenaghan, of which an abstract has been given, constitutes the substance of the evidence offered at the trial.

The Circuit judge charged the jury that the complaint to marshal the assets of the estate of McClenaghan enabled his creditors to establish their demands under that action, and prevented them from bringing separate actions against the executors; that while the land was in possession of the devisee, who was a party to that action, it was certainly competent for the court to order a sale to pay debts of the testator, but if

there was a *bona-fide* alienation by the devisee it was not invalid by reason of the pendency of the action to marshal assets, because that action was not a proceeding to subject lands in the possession of the devisee to the payment of the debts of the testator. He also instructed the jury that the sale by the sheriff was a sale by the devisee, and left it to them to say whether the alienation was *bona-fide*, and what was the nature of the possession by Mrs. McIntyre of the lot in question; telling them that if she held possession as executrix the sale by the sheriff was invalid, but if she held as devisee and executrix the sale if *bona-fide* would be valid.

To this charge plaintiff excepted, and requested the judge to charge as follows : " That the court having taken charge of the land devised, upon the application of the devisee and executrix, for the purpose of sale and the payment of debts of the testator, there could be no valid alienation except by the order of the court; that under the circumstances of this case the alienee of the devisee and executrix could stand in no better position than the devisee and executrix before such alienation ; that the jury should find for the plaintiff the land in dispute :" all of which was refused.

The jury found a verdict for the defendant and judgment being entered thereon the plaintiff appeals. 1st. Because of error in charging that the sale by the sheriff and purchase by the defendant was an alienation by the devisee before suit brought by the creditors against the devisee to subject the lands devised to payment of testator's debts. 2d. Because the jury were instructed that the action to marshal assets was not an action to subject the lands devised to payment of the debts of the testator. 3d. Because the judge charged that the alienation by the devisee would be valid notwithstanding the pendency of the action to marshal assets. The 4th, 5th, and 6th exceptions allege error in refusing to charge as requested by plaintiff. 7th. Because the judge erred in refusing to charge that Mrs. McIntyre held the property in question as executrix until the debts of the testator were paid, and until then could make no valid alienation as devisee.

The fundamental inquiry in this case is as to the effect of

the proceeding to marshal assets. In the càse of *Thomson* v. *Palmer*, 2 *Rich. Eq.* 36, which is regarded as a leading case upon this subject, it is said : " When an executor or administrator comes for the aid of the court in administering the estate in his hands, the court should be placed in possession of the fund to be administered, and when the court is called upon to order a sale of land in aid of assets, it should have the command of the proceeds of sale to be administered. We should not be required to enjoin creditors from proceeding elsewhere unless we are placed in possession of the funds to which the creditors are entitled so as to enable us to satisfy all the just rights with which we have interfered." When, therefore, the action to marshal assets was commenced, the court must be regarded as having taken possession and assumed the control of all the assets of the testator for the purpose of providing for the payment of his debts, and as long as that proceeding was pending any person who purchased any of the property constituting a part of such assets, with notice of that proceeding, must be regarded as having bought subject to the right of the court to dispose of such property for the purpose of effecting the objects of that action, and, if necessary, make a sale of the property. Certainly no party to the action could, by a sale or otherwise, withdraw any of the assets from under the control of the court and thereby defeat the purpose for which the court had assumed the control of such assets. It would be a reproach to the administration of justice if a court, after prohibiting creditors from pursuing their rights in the ordinary form, and assuming the control of the assets of a debtor for the purpose of providing for the payment of debts, should not be able to protect such assets, and prevent them from being withdrawn and diverted to other purposes.

In *Wiswall* v. *Sampson*, 14 *How.* (*U. S.*) 52, it was held that one having a judgment lien on land of his debtor, which is in the possession of a receiver appointed by the court of chancery under a bill by a creditor against the debtor and a third person to set aside a conveyance to the latter upon the ground of fraud, cannot proceed to levy his execution, if he have notice of the fact that the property is in the custody of

the law; he must apply to the court of chancery, which will take care to protect his interest in making a sale or in distributing the proceeds. In that case Wiswall, having obtained a judgment against Ticknor, issued his execution, which was returned *nulla bona.* Thereupon he filed a bill to set aside a deed for a lot of land made by Ticknor to one Day, on the ground of fraud. Under this bill the deed was set aside and a receiver was appointed and placed in possession of the land, who remained in possession until the lot of land was sold by the master and bought by Wiswall. Pending this proceeding and after the appointment of the receiver the lot of land in question was sold by the U. S. marshal under two judgments against Ticknor, prior in date to that of Wiswall, and bought by one Dargan, the lessor of Sampson, prior to the sale by the master, and it was held that Wiswall's title was superior to that of Sampson, lessee of Dargan.

In that case Nelson, J., delivering the opinion of the court, uses this language: "The settled rule, also, appears to be that where the subject-matter of the suit in equity is real estate, and which is taken into the possession of the court, pending the litigation, by the appointment of a receiver or by sequestration, the title is bound from the filing of the bill, and any purchaser *pendente lite,* even if for a valuable consideration, comes in at his peril." Again he says: "It is sufficient to say that the sale under the judgment, pending the equity suit, and while the court was in possession of the estate, without leave of the court, was illegal and void." And again: "While the estate is in the custody of the court, as a fund to abide the result of a suit pending, no sale of the property can take place, either on execution or otherwise, without leave of the court for that purpose. And upon this ground we hold that the sale by the marshal on the two judgments was illegal and void, and passed no title to the purchaser."

That case, the authority of which has been recognized in *Clinkscales* v. *Pendleton Manufacturing Co.,* 9 *S. C.* 323, would seem to be decisive of the question under consideration. For while it is true that in this case no receiver had been appointed, yet it is well settled that the possession of a receiver

is nothing more nor less than the possession of the court, he being, as it is said, merely the hand of the court; and as we have seen, where under a proceeding to marshal assets the court is asked to sell land for the payment of debts, the court must be regarded as having the possession and the control of the property which it is asked to sell, for the purpose of applying it to the payment of debts, which it has prohibited creditors from collecting elsewhere or otherwise. In this case the court had assumed the control and directed its officer to sell the real estate, and although the sale had been postponed under the belief that enough had been sold to pay the debts then established, yet the order for sale had never been rescinded, and the very terms of the referee's report showed that a further sale might be necessary. And when it was subsequently ascertained that it was necessary to sell the whole of the real estate, the land now in controversy was actually sold by the proper officer of the court for the purpose of paying debts established against the estate of the testator.

It is contended, however, that when the defendant bought the lot in question at the sale by the sheriff the proceedings in the action to marshal assets showed that enough property had been sold to pay all the debts then established against the estate of the testator. It is clear, however, that at that time there had not been enough sold to pay all the debts *then due*, even if it be conceded that enough had been sold to pay the debts *then established*, because another claim was afterwards established which rendered it necessary to sell the land now in controversy; and it is equally clear, from the terms of the referee's report, that at the time of the sheriff's sale other claims were then outstanding which might be established, and if so would render a further sale necessary, though the referee hoped that such a contingency would not occur. At the time of the sale by the sheriff the court had not released its grasp upon the property of the testator of which it had assumed the control, and had prohibited creditors from pursuing it except under the proceeding to marshal assets; and it is well settled that as long as any of the funds or assets are under the control of the court, any creditor may come in, establish his demand, and claim pay-

ment out of the assets remaining under the control of the court.

But it may well be questioned whether, at the time of the sheriff's sale, enough property had been sold to pay the debts *then established* against the estate of the testator, for the simple reason that it is quite obvious from the proceedings in the action to marshal assets, of which an abstract has been given in the commencement of this opinion, that it was a matter of great uncertainty what amount of claims had been then established: so great, that as late as August 24, 1875, long after the sale by the sheriff, the court passed an order which, after reciting that the referee's report was too indefinite to enable the clerk to ascertain what claims had been established, directed the clerk to make a full report of the condition of all the claims, with a succinct statement of the questions which it may be necessary for the court to determine. And even after the clerk made his report under this order, this uncertainty does not seem to have been removed, for on December 3, 1875, the court made another order directing a referee to call in creditors and make a report of claims, and that under his report a claim was established which rendered it necessary to sell the land now in controversy.

This uncertainty as to the amount of claims then established obviously arose from the indefinite character of the original report on claims, from which it appeared that the statute of limitations was not pleaded to some of the simple contract claims which appeared on their face to be barred; and from the fact that the referee, though required to call in the creditors as well of McClenaghan & Fairlee as of McClenaghan individually (one of whom did come in and present his claim), for some unexplained reason, in making his estimate that a sufficient amount of property had been sold, disregarded the claim presented against McClenaghan & Fairlee, which turns out to be the same claim which, in a different form, was afterwards established, and which rendered a sale of the whole of the land necessary. This claim, manifestly, was not rejected by the referee, for although it was marked in the schedule " barred by the statute," yet it was not on the list of those to which the

statute was pleaded; and furthermore the referee says in his report, "If, however, in auditing the claims against the firm of McClenaghan & Fairlee, it should become necessary to sell the remainder of testator's lands, the referee can yet do so:" showing that the purpose of the referee was simply to show what claims had been established against McClenaghan individually, and not to pass upon those which were presented against him as the surviving member of the firm of McClenaghan & Fairlee, but to leave them for further consideration.

It being conceded that the defendant, through her husband and agent, had, before the sheriff's sale, examined the proceedings under the action to marshal assets, she must be regarded as having had actual notice, at the time of her purchase, of every fact disclosed by those proceedings. She knew, therefore, that the land in question belonged to the unsettled estate of McClenaghan; that there was a proceeding then pending for the settlement of that estate, in which the court had been asked to marshal the assets of that estate and to sell the lands of the testator for the payment of his debts; that an order for the sale of all the lands, including the lot in controversy, had been made; that after this order had been partially executed by a sale of a portion of the land any further sale was *postponed*, but the order for sale was not *rescinded*, because it was *supposed* (not *ascertained*) that enough had been sold to provide for the payment of the debts then established; that the amount of the claims was not certainly ascertained by reason of the indefinite character of the report on claims and the unascertained claims against McClenaghan & Fairlee, which might render a further sale necessary—a contingency distinctly mentioned in the referee's report; that accordingly the court, while directing the referee who had made the sale to pay the costs and fees, taxes, judgments, and specialty claims, had made no order for the payment of the simple contract claims, a class to which the unascertained claims belonged, amongst which was the very claim which was afterwards established under a different form, and which was not then adjudicated, for the defendant did not then have notice of the fact stated in the affidavit of the referee, made long after the sheriff's sale, that

the statute had been pleaded to every claim, but on the contrary she did have notice that this claim was *not* on the list of those to which the statute was pleaded ; and she also had notice that the lot now in controversy was the only land remaining which was liable to be sold, on the contingency mentioned, which contingency did subsequently occur.

If, therefore, the purchase by the defendant at sheriff's sale be regarded the same as if she had purchased directly from Mrs. McIntyre, the defendant in the execution, she occupies the position of one who has purchased *pendente lite* from a party to an action, some of the property which was the subject-matter of the action and under the authority above cited, her purchase must be regarded as illegal, null, and void, at least as against the title of one who claims under a sale made by the order of the court in that action. If, on the other hand, the purchase by the defendant at sheriff's sale be not regarded. as a purchase from the defendant in execution, Mrs. McIntyre, then she cannot claim as the alienee of the devisee under the statute of William and Mary.

The case of *Smith* v. *Grant*, 15 *S. C.* 136, relied on by the respondent, does not apply. The authority of that case is fully recognized, but it differs essentially from the case now under consideration. In that case there was no action pending to marshal the assets of the testator, and the court had not been applied to for a sale of the land for the payment of the debts of the testator, and had not taken the possession and assumed the control of it for that purpose. Then, too, the alienation by the devisee was voluntary, while here it was involuntary; and one of the purposes of the alienation in that case was for the payment of the debts of the testator, and the proceeds of the sale made by the assignee in bankruptcy were actually applied to the payment of a debt of the testator, while here the sale was made to pay an individual debt of the devisee, and the money so applied.

When, however, the court is called upon to say that a purchase from a party to an action, of the property which is the subject-matter of the action, by a person who has notice of the pendency of that action and of the purposes for which it was

instituted, and that such purposes had not been accomplished, gives a valid title against one who claims under a sale made by the order of the court in that action, for the purpose of effecting the object for which such action was instituted, a very different question is presented from that which was determined in the case of *Smith* v. *Grant, supra.* In this case the creditors of the testator had been enjoined from suing, and the court had undertaken to provide for the payment of their debts, which they had been prohibited from enforcing in the usual way; and before this was done, and while the proceedings were pending for that purpose, certainly no court would allow a purchase, with notice, from a party to the action of a portion of the property which by its order had been withdrawn from the reach of the creditors, to prevail against a purchase at a sale under the order of the court for the purpose of effecting the object for which it had withdrawn the property from the reach of the creditors, and had assumed the duty of applying it to the payment of their debts.

Indeed, the terms of the order enjoining creditors in this case are broad enough to restrain creditors, not only from bringing suit against the executors, but against the devisee also. For its language is, " That all creditors of John C. McClenaghan and of McClenaghan & Fairlee be, and they are hereby, restrained and enjoined from proceeding, either at law or equity, to sue or collect any claims against the estate of John C. McClenaghan deceased." If, therefore, after this order was passed, any creditor had undertaken "to sue or collect " his claim by an action against Mrs. McIntyre as devisee, who was a party to the action in which the injunction had been granted, he would have been violating the order of injunction by undertaking to sue and collect a claim against the estate of McClenaghan by an action against Mrs. McIntyre to subject to the payment of his debt some of the very land which she had asked the court to sell for the purpose of paying the debts of her testator. She might have had such action dismissed, and the creditor required to come in and enforce his claim, under the action which she had instituted for the express purpose of enabling the creditors to reach the very same land. If so, then,

clearly, any person purchasing from her, either directly or through the sheriff, with notice, could not claim as a *bona-fide* alienee of the devisee before action brought against her as such.

Again, the rule at all sales by the sheriff under execution is *caveat emptor*. The sheriff only sells, and the purchaser buys only the interest of the defendant in the execution. Here the only thing sold was the interest of Mrs. McIntyre, and that was only what remained after the debts of her testator had been provided for under the proceedings which she had instituted for that purpose, whereby she had brought all of the property of her testator, including the land in controversy, into court and asked for the sale of it for the purpose of paying the debts of her testator ; and while her action for that purpose was pending, she certainly could not, either directly or through the sheriff, make any *bona-fide* alienation except of such interest as might remain to her after the debts of her testator were satisfied.

From these views it follows that the Circuit judge erred in refusing to charge as requested, and in instructing the jury that the alienation by the devisee, through the sheriff, was not rendered invalid by the pendency of the proceedings to marshal the assets of the estate of McClenaghan.

It does not appear from the " Case" as submitted here that there was any request to charge the proposition of law, the omission of which is claimed to be error in the seventh exception, and hence that matter is not properly before us.

The judgment of this court is that the judgment of the Circuit Court be reversed, and that the case be remanded to that court for a new trial.